UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RYAN BURRESS and AMANDA BURRESS, | § § § | Case No. 7:18-CV-00077 |
| Plaintiffs, | § § | |
| v. | § § | |
| CLYDE NEAL ELLIS, M.D., | § § | COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |
| Defendant. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW, Ryan Burress and Amanda Burress, Plaintiffs in the above referenced cause, complaining of Clyde Neal Ellis, M.D., Defendant, and files Plaintiffs' Original Complaint, and would show the Court as follows:

**I.**

**PARTIES**

1. Plaintiffs **Ryan Burress and Amanda Burress** are individuals residing in the state of Oklahoma, where they reside at 4040 Elm Grove Road, Muskogee, Oklahoma 74403.

2. Defendant **Clyde Neal Ellis, M.D.** is an individual citizen of the State of Texas, whose mailing address listed by the Texas Medical Board is at Texas Tech University HSC, 701 W. 5th St., Odessa, Ector County, Texas 79763 and whose residence is in Midland County, Texas at 4414 Guadalupe St., Midland, Texas 79707.

## II.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the Defendant because Clyne Neal Ellis, M.D. is a citizen of the State of Texas and has established continuing systematic and minimum contacts with the State of Texas, such that the exercise of personal jurisdiction over him will comport with the due process clauses of the Federal and State Constitutions.

5. Venue is proper in the United States District Court, Western District of Texas, under 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district, at or near Odessa, Texas.

## III.

## SHORT SUMMARY OF THE CASE

6. On February 14, 2016, Ryan Burress presented to Medical Center Hospital Emergency Department complaining of abdominal pain, nausea, and vomiting. Dr. Brian Taylor evaluated the patient and CT scan showed findings consistent with acute appendicitis. Dr. Taylor referred Ryan Burress to Defendant Clyde Ellis, M.D. and Ryan Burress underwent what should have been routine surgery to remove his appendix at Medical Center Hospital in Odessa, Texas. During that surgery, the operative notes reveal that Mr. Burress suffered from “acute gangrenous appendicitis.” As a result, the surgery and nature of Mr. Burress’ acute gangrenous appendicitis required a full abdominal washout including the pelvis, subdiaphragmatic space, appendiceal bed, and

between adjacent loops of the small bowel. Mr. Burress was discharged from Medical Center Hospital in Odessa, Texas less than 48 hours after the surgery was performed by Defendant Ellis. After discharge, Mr. Burress was diagnosed with pelvic and intrahepatic abscesses and sepsis. Mr. Burress was admitted to St. John Medical Center in Tulsa, Oklahoma for treatment of the pelvic and intrahepatic abscesses and sepsis. As a result of the pelvic and intrahepatic abscesses and sepsis, Mr. Burress suffered from severe acute interstitial nephritis and acute kidney injury.

7. Defendant Clyde Neal Ellis, M.D. was negligent, among other things, in the following particulars:

a. Failing to appropriately treat Ryan Burress' diffuse peritonitis;

b. Failing to prescribe the appropriate dose of IV antibiotics, specifically Zosyn 3.375 g IV was prescribed Q8hrs instead of Q6hrs;

c. Failing to anticipate the usual postoperative course for a patient with gangrenous appendicitis and diffuse suppurative peritonitis; and

d. Failing to discharge Ryan Burress with appropriate broad spectrum antibiotic coverage.

8. Plaintiffs bring this action to recover all damages Plaintiffs have suffered as a result of the negligent misconduct of Defendant.

**IV.**

**PRE-SUIT STATUTORY COMPLIANCE**

9. Plaintiffs have fully complied with all the applicable pre-suit notice requirements of Texas Civil Practice and Remedies Code, Chapter 74.

10. Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code, Plaintiffs are providing an expert report, along with curriculum vitae, of expert witness Jeff Durgin, MD, FACS. *See* Exhibit "A" attached hereto.

11. Defendant Clyde Neal Ellis, M.D. ("Dr. Ellis") is an individual who is a citizen of Texas, whose mailing address listed by the Texas Medical Board is at Texas Tech University HSC, 701 W. 5th St., Odessa, Ector County, Texas 79763 and whose residence is in Midland County, Texas at 4414 Guadalupe St., Midland, Texas 79707.

**V.**

**FACTUAL BACKGROUND**

12. On February 14, 2016, Ryan Burress presented to Medical Center Hospital Emergency Department, in Odessa, Texas, complaining of abdominal pain, nausea, and vomiting.

13. Dr. Brian Taylor evaluated the patient and CT scans showed findings consistent with acute appendicitis.

14. The same day, February 14, 2016, Ryan Burress was taken to the operating room for laparoscopic appendectomy. Dr. Clyde Neal Ellis dictated, in his operative report, the operative findings which included: "perforation of the mid-portion of the appendix with multiple fecaliths identified within the abdomen. There was purulent fluid in the sub-diaphragmatic space, hepatic space, and the pelvis. Multiple fibrinous adhesions were identified between the anterior abdominal wall and loops of bowel and between the cecum and loops of bowel. The appendix could be easily identified and dissected free from the inflammatory substance."

15. The operative report goes on to read: "At this point, a full abdominal washout was performed including the pelvis, subdiaphragmatic space, appendiceal bed, and between adjacent loops of small bowel with approximately three liters of fluid. Patient was taken to the recovery room in satisfactory condition. Sponge, needle counts were correct." The surgical pathology showed, "Acute gangrenous appendicitis."

16. On February 15, 2016, a progress note signed by Dr. Neal Ellis showed that the patient had "continued diffuse tenderness" on abdominal exam. His laboratory examination showed his WBC count to be elevated at 15.9 K/UL the same day. The progress note did not comment on whether the patient had passed flatus or had a bowel movement. The patient's Zosyn and Flagyl were discontinued and he was started on Doxycycline oral.

17. On February 16, 2016, Ryan Burress was discharged. The nurses noted that the patient had, "hypoactive bowel sounds."

18. The discharge instructions and orders show that the patient was discharged on Vibramycin and Tramadol. This is contrary to the discharge summary dictated by Dr. Neal Ellis which reads, 'At the time of discharge the patient was given a prescription for Levaquin and Flagyl to be taken as an outpatient." The discharge order signed by Dr. Ellis shows Vibramycin was prescribed at discharge.

19. On February 22, 2016, Ryan Burress reported to his family physician, Gary Lambert, D.O., in Muskogee, Oklahoma. Dr. Lambert's office notes read as follows, "Mr. Burress presents for evaluation of abdominal pain and post laparoscopic appendectomy performed in Odessa TX. He developed fever five days ago. He denies additional complaints. There are no aggravating factors reported, there are no alleviating factors reported. Records from recent hospitalization have been requested." Ryan Burress was prescribed Gentamycin, 80mg IM daily x5 days with a return visit in one week.

20. On February 26, 2016, Mr. Burress presented to Northeastern Health - Tahlequah and was evaluated by Berry Winn, M.D. CT scan showed a 6cm abscess in the pelvis and a 4cm abscess in the right hepatic lobe. Ryan Burress was diagnosed with pelvic and intrahepatic abscesses. His labs and clinic picture were consistent with sepsis.

Ryan Burress received IV fluids and IV antibiotics in the emergency department. Ryan Burress was transferred to St. John Medical Center and admitted to the Intensive Care Unit.

21. On February 27, 2016, Ryan Burress underwent successful CT-directed drainage of the hepatic abscess. 20 ml of grossly purulent material was obtained and an 8 – French drain placed. Additionally, Ryan Burress underwent a CT–directed drainage of the pelvic abscess. 100 ml of grossly purulent material was obtained and a 12 – French drain placed.

22. Ryan Burress was maintained on IV antibiotics and on March 8, 2016, a repeat CT was done without contrast. The CT showed the pelvic pigtail drain in place with no residual abscess identified. The right hepatic pigtail drain was also in place with only a small amount of air adjacent to the drain. The radiologist commented that it was difficult to determine if there was residual abscess without IV contrast. Also noted were a right pleural effusion and a small amount of free fluid along the right pericolic gutter.

23. Due to persistent elevation in the BUN and Creatnine, Ryan Burress underwent CT-guided left renal biopsy on March 15, 2016. Two core specimens were obtained. The pathology report showed severe acute interstitial nephritis with predominantly lymphocytic infiltrates; no glomerular lesion identified, rare non-necrotizing granuloma in interstitium.

24. On March 17, 2106, a repeat CT scan of the pelvis, without contrast, showed interval removal of the pigtail catheter, residual pelvic fluid collection accounting for lack of contrast. Repeat ultrasound of the abdomen showed small residual collection in the liver, not a defined abscess; more favorable to a phlegmon or a focal residual area of infection; developing scar or focal hematoma less likely.

25. A repeat liver ultrasound on March 21, 2016 showed previously drained liver abscess unchanged in size from March 12, 2016.

26. According to the Nephrology notes, Ryan Burress was felt to have an acute kidney injury related to acute tubular necrosis in the setting of contrast exposure, hepatic abscess, supra-therapeutic Vancomycin and concomitant use of Gentamicin previously.

27. On March 25, 2016, Ryan Burress was discharged. The following appointments were made for follow-up:

1. Return in 1 week for repeat chem-8 panel;
2. Follow up with Dr. Irfan Kundi, nephrology, 3.31.16;
3. Follow up with the radiology department on 4/4/2016 for repeat CT; and follow up Dr. Lambert 4/6/2016.

28. On April 6, 2016, Mr. Burress saw Dr. Lambert for follow- up evaluation. Dr. Lambert noted that Mr. Burress' periumbilical pain had resolved. He also noted that, "the patient's incisions are healing well and he will be given a release to return to work full duty."

**VI.**

**CLAIM FOR RELIEF – PROFESSIONAL NEGLGENCE**

**(MEDICAL MALPRACTICE)**

29. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 23 of this complaint as if fully set forth herein.

30. Defendant Clyde Neal Ellis, M.D. was negligent, among other things, in the following particulars:

a. Failing to appropriately treat Ryan Burress' diffuse peritonitis;

b. Failing to prescribe the appropriate dose of IV antibiotics, specifically Zosyn 3.375 g IV was prescribed Q8hrs instead of Q6hrs;

c. Failing to anticipate the usual postoperative course for a patient with gangrenous appendicitis and diffuse suppurative peritonitis; and

d. Failing to discharge Ryan Burress with appropriate broad spectrum antibiotic coverage.

*See also,* Expert Report of Jeff Durgin, MD, FACS attached hereto as Exhibit "A."

31. Each of the above-described acts and/or omissions of Clyde Neal Ellis, M.D. singularly and/or in combination with others, constituted negligence, which proximately caused the occurrence in question and the resulting injuries and damages sustained by the Plaintiffs.

**VII.**

**INJURIES AND DAMAGES**

32. Personal Injury Damages: The negligence of Defendant Ellis proximately caused the personal injuries and damages of Ryan Burress and Amanda Burress. Plaintiffs seek all damages to which they are entitled at law for personal, emotional and physical injuries sustained as a result of the Defendant's acts and/or omissions, as well as Plaintiffs' personal, emotional and physical damage that will be sustained in the future as a result of the occurrence in question.

33. Plaintiffs are entitled to damages as a result of the conduct of the Defendant including, but not limited to:

a. Medical, hospital, and pharmaceutical expenses, past and future;

b. Lost wages, past and future;

c. Physical pain and suffering, past and future;

d. Emotional pain and suffering and mental anguish, past and future;

e. Physical impairment, past and future; and

f. Disfigurement.

34. Plaintiff Amanda Burress has and will continue to suffer from loss of spousal services and loss of consortium, which were proximately caused by the negligence of Defendant, for which she seeks recovery in an amount in excess of the minimum jurisdictional limits of this Court.

35. Plaintiffs seek recovery of the damages listed above which are in an amount which exceeds the minimum jurisdictional limits of this Court.

## JURY DEMAND

36. Plaintiff hereby demands a jury trial as provided by Fed. R. Civ. P. Rule 38.

## PRAYER

WHEREFORE, Plaintiffs pray that upon the final trial, Plaintiffs have and recover, both jointly and severally, as follows:

a. For general, compensatory and special damages in sums according to proof;

b. For interest on said sums as may be provided by law;

c. For costs of suit incurred herein; and

d. For such other and further relief as the Court deems just and proper.

Dated: April 27, 2018.

Respectfully submitted,

LOVELL, LOVELL, ISERN & FARABOUGH, LLP
Joe L. Lovell, SBN 12609100
Kevin A. Isern, SBN 10432900
112 S.W. 8th Avenue, Suite 1000
Amarillo, Texas 79101
Telephone: (806) 373-1515
Facsimile: (806) 379-7176
Email: joe@lovell-law.net
kevin@lovell-law.net

By: */s/ Joe Lovell*
Joe L. Lovell

ATTORNEYS FOR PLAINTIFFS

"As to diseases, make a habit of two things — to help, or at least, to do no harm." -Hippocrates

**Jeff Durgin, MD, FACS**
Diplomate American Board of Surgery
1811 W. Wall St
Midland, TX 79701
Office: 855-957-8743
Cell: 432-312-9955
FAX: 432-247-1632
surgical.expertise@gmail.com

April 16, 2018

Re: Ryan Burress

Dear Mr Kevin Isern,

Thank you for the opportunity to review the medical records in the case of Ryan Burress and opine on the matter.

I. CREDENTIALS AND QUALIFICATIONS:

I am a general surgeon certified by the American Board of Surgery and the National Board of Medical Examiners. I am in full-time surgical practice with surgical privileges at Midland Memorial Hospital and Odessa Regional Medical Center. I have held the positions of Chairman of Surgery at Midland Memorial Hospital, Trauma Medical Director at Midland Memorial Hospital and Co-director of the Intensive Care Unit at Midland Memorial Hospital. I was previously appointed Assistant Professor of Surgery at Texas Tech Health Science Center – Permian Basin and Director of the Surgery Student Clerkship at Texas Tech Health Science Center – Permian Basin. I was a trauma surgeon in the Army Reserve from 2001-2011 and did two tours in Iraq as a trauma surgeon. Attached to this Affidavit is a true and correct copy of my resume setting forth my state licensure, education, employment history and general qualifications as a medical doctor in Texas.

I have attended to and operated on hundreds of patients with appendicitis. I am familiar with the preoperative operative and postoperative care of such surgical patients and familiar with the indications, technique and potential complications of laparoscopic and open appendectomy. Based on my education training and experience, I am therefore qualified to opine on the standard of care required by surgeons regarding the preoperative, intraoperative, and postoperative care of

patients similar to and including Ryan Burress. My opinions are based on reasonable medical probability.

II. PREDICATE FOR OPINIONS AND METHODOLOGY FOR REVIEW:

I have reviewed the medical records from Medical Center Hospital, the office of Gary Lambert, Northeasten Health, and St John Medical Center from 02/2016 to 4/2016.

III. SUMMARY OF CLINICAL EVENTS:

On 2/14/2016, Mr Ryan Burress presented to Medical Center Hospital Emergency Department complaining of abdominal pain, nausea, and vomiting. Dr. Brian Taylor evaluated the patient and CT scan showed findings consistent with acute appendicitis.

The same day, 2/14/2016, Mr. Burress was taken to the op in the operating room for laparoscopic appendectomy. Dr. Clyde Neal Ellis dictated in his operative report the operative findings which included: "perforation of the mid-portion of the appendix with multiple fecaliths identified within the abdomen. There was purulent fluid in the sub-diaphragmatic space, hepatic space, and the pelvis. Multiple fibrinous adhesions were identified between the anterior abdominal wall and loops of bowel and between the cecum and loops of bowel. The appendix could be easily identified and dissected free from the inflammatory substance."

The operative report goes on to read: "At this point, a full abdominal washout was performed including the pelvis, subdiaphragmatic space, appendiceal bed, and between adjacent loops of small bowel with approximately three liters of fluid. Patient was taken to the recovery room in satisfactory condition. Sponge, needle counts were correct."

The surgical pathology showed, "Acute gangrenous appendicitis."

On 2/15/2016, a progress note signed by Dr. Neal Ellis showed that the patient had "continued diffuse tenderness" on abdominal exam. His laboratory examination showed his WBC count to be elevated at 15.9 K/UL the same day. The progress note did not comment on whether the patient had passed flatus or had a bowel movement. The patients Zosyn and Flagyl were discontinued and he was started on doxycycline oral.

On 2/16/2016, Mr. Burress was discharged. There is no progress note from Dr. Ellis and lab orders for the 16th in the records reviewed. The nurses notes did document that the patient had, "hypoactive bowel sounds."

The discharge instructions and orders show that the patient was discharged on Vibramycin and Tramadol. This is contrary to the discharge summary dictated by Dr. Neal Ellis which reads, 'At the time of discharge the patient was given a prescription for Levaquin and Flagyl to be taken as an outpatient." The discharge order signed by Dr. Ellis shows Vibramycin was prescribed at discharge.

On 2/22/2016, Mr Burress reported to his family physician Gary Lambert, DO in Muskogee, OK. Dr. Lambert's office notes read as follows, "Mr. Burress presents for evaluation of abdominal pain and post laparoscopic appendectomy preformed In Odessa TX. He developed fever five days ago. He denies additional complaints. There are no aggravating factors reported, there are no alleviating factors reported. Records from recent hospitalization have been requested." Mr. Burress was prescribed Gentamycin 80mg IM daily x5 days and return visit in one week.

On 02/26/2016, Mr. Burress presented to Northeastern Health - Tahlequah and was evaluated by Berry Winn, MD. CT scan showed a 6 cm abscess in the pelvis and a 4 cm abscess in the right hepatic lobe. Mr. Burress was diagnosed with pelvic and intrahepatic abscesses. His labs and clinic picture were consistent with sepsis. Mr. Burress received IV fluid and IV antibiotics in the emergency department. Mr. Burress was transferred to St John Medical Center and admitted to the Intensive Care Unit.

On 02/27/2016, Mr. Burress underwent successful CT-directed drainage of the hepatic abscess 20 ml of grossly purulent material was obtained and an 8 French drain placed. Also, a CT directed drainage of the pelvic abscess, 100 ml of grossly purulent material obtained and a 12 French drain placed.

Mr. Burress was maintained on IV antibiotics and on 3/8/2016, a repeat CT pelvis abdomen without contrast showed the pelvic pigtail drain in place with no residual abscess identified. The right hepatic pigtail drain in place with only a small amount of air adjacent to the drain. The radiologist commented that it was difficult to determine if there is residual abscess without IV contrast. Also noted were a right pleural effusion and a small amount of free fluid along the right pericolic gutter.

Due to persistent elevation in the BUN and Creatnine, Mr. Burress underwent CT-guided left renal biopsy on 3/15/2016. Two core specimens obtained 18-gauge needle. The pathology report showed severe acute interstitial nephritis with predominantly lymphocytic infiltrates; no glomerular lesion identified, Rare non-necrotizing granuloma in interstitium.

On 3/17/2106, Repeat CT scan of the pelvis without contrast showed interval removal of the pigtail catheter, residual pelvic fluid collection accounting for lack of contrast. Repeat ultrasound of the abdomen show small residual collection in the liver, not a defined abscess; more favorable to a phlegmon or a focal residual area of infection; Developing scar or focal hematoma less likely.

Repeat liver ultrasound on 3/21/2016 showed previously drained liver abscess unchanged in size from 3/12/2016.

According to the Nephrology notes, Mr. Burress was felt to have acute kidney injury related to acute tubular necrosis in the setting of contrast exposure, hepatic abscess, supra-therapeutic vancomycin and concomitant use of gentamicin previously.

On 03/25/2016, the Mr. Burress was discharged. The following appointments were made for follow-up:

1. Return in 1 week for repeat chem-8 panel
2. Follow up with Dr. Irfan Kundi, nephrology, 3/31/16
3. Follow up with the radiology department on 4/4/2016 for repeat CT.
4. Follow up Dr. Lambert 4/6/2016

On 4/6/2016, Mr. Burress saw Dr. Lambert for follow- up evaluation. Dr. Lambert noted that Mr. Burress's periumbilical pain had resolved. He also noted that, "the patient's incisions are healing well and he will be given a release to return to work full duty."

IV. FAILURE OF STANDARD OF CARE FOR SURGEON, CLYDE NEAL ELLIS, MD:

a. FAILURE OF DR. ELLIS to appropriately treat the patient's diffuse peritonitis.
b. FAILURE OF DR. ELLIS to prescribe the appropriate dose of IV antibiotics, specifically Zosyn 3.375 g IV was prescribed Q8hrs instead of Q6hrs.
c. FAILURE OF DR. ELLIS to anticipate the usual postoperative course for a patient with gangrenous appendicitis and diffuse suppurative peritonitis.
d. FAILURE OF DR. ELLIS to discharge the patient with appropriate broad spectrum antibiotic coverage.

V. ACTIONS REQUIRED TO MEET THE STANDARD OF CARE, CLYDE NEAL ELLIS, MD:

- The standard of care required that Mr. Burress be hospitalized until his peritonitis resolved, which included resolution of leukocytosis and postoperative ileus.
- The standard of care required that Mr. Burress be maintained on the appropriate dose of IV antibiotics. The patient should have received Zosyn 3.375g IV every 6 hours rather than every 8 hours.

- The standard of care required that Mr. Burress be discharged on appropriate broad spectrum oral antibiotics. The patient should have been discharged on Levaquin and Flagyl rather than doxycycline, as doxycycline does not cover the gram negative and anaerobic bacteria likely to be present in the setting of peritonitis from appendiceal perforation.
- The standard of care required that Mr. Burress be see in early follow-up rather than 10-14 days after discharge.

## VI. OPINION:

Laparoscopic appendectomy is one of the more common surgeries performed by general surgeons. Patients with appendicitis without the complication of rupture, perforation, and/or gangrene can be discharged within 12 to 48 hours of the operation safely. The converse is true for complicated appendicitis, which caries significant morbidity especially if not treated properly.

A patient with perforated, gangrenous appendicitis with suppurative peritonitis such as Mr. Burress would typically be hospitalized for 3 to 7 days. During the hospitalization, the patient would be maintained on broad spectrum IV antibiotics, such as Zosyn. While the criteria for discharge vary, the traditional criteria come from the pediatric literature and are as follows: normal WBC, normal bowel function, and afebrile for 24 hours.

The reason for this extended hospitalization is that the bacteria and pus released at the time of rupture puts the patient at risk for a post-operative abscess which occurs in 20-25% of perforated appendicitis cases. In a patient with pus up under the diaphragm, between the bowel loops, and basically all over the peritoneal cavity, that percentage jumps to over 50%.

Mr. Burress was discharged when the nursing and physician notes read that he still had diffuse abdominal tenderness and hypoactive bowel sounds. He also still had an elevated WBC count. There was no documentation as to whether he had passed flatus or had a bowel movement.

The other issue is that his antibiotic regimen was wrong at every point in his care. The Zosyn was dosed every 8 hours instead of every 6 hours. He was then converted to oral antibiotics after only 24-36 hours and placed on doxycycline which does not offer broad spectrum coverage. An antibiotic such as Augmentin or a combination such as Levaquin and Flagyl should have been prescribed to cover the broad pathogens present with perforated appendicitis.

The premature discharge and wrong antibiotic coverage lead to the patient developing the pelvic and liver abscesses. Mr. Burress then started getting very sick and even septic which affected his kidney function. While his kidney function decline was multifactorial (to include contrast exposure, hepatic abscess, the vancomycin, and the gentamycin), the main factor at play was his underlying illness resulting in sepsis and organ dysfunction.

Mr. Burress was then subjected to a prolonged hospitalization, multiple drainage procedures, and even a kidney biopsy. It is my opinion, based upon a reasonable degree of medical probability that Mr. Burress's sepsis, intraabdominal abscesses, kidney damage, and prolonged hospitalizations could have been prevented with proper hospitalization and proper antibiotic coverage. Dr. Ellis violated the standard of care as listed above and caused the abscesses and prolonged hospitalization described herein.

I reserve the right to amend my opinion and report pending further information.

Jeff Durgin, MD, FACS

State of Texas County of TEXAS

Before me, a notary public, on this day personally appeared JEFFREY DURGIN (constituent), known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.

Given under my hand and seal of office this 16 day of APRIL, ______

Notary Public's Signature
(Personalized Seal)

JOANA K. SULLIVAN
Notary Public, State of Texas
My Commission Expires
April 02, 2019

Notary Signature

JOANA K. SULLIVAN

Print Name